IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


USA JET AIRLINES, INC.,

    Plaintiff,

vs.   Civ. No. 10-1138 MCA/KBM

UNITED STATES DEPARTMENT OF ENERGY,
NATIONAL NUCLEAR SECURITY ADMINISTRATION,

    Defendants.


**MEMORANDUM OPINION AND ORDER**

    This case is before the Court upon Plaintiff's *Motion for Preliminary Injunction*. [Doc. 12] This Court has considered the Motion, Defendant's *Response* [Doc. 21], Plaintiff's *Reply* [Doc. 28], the record in this case, and the applicable law, and is otherwise fully advised in the premises. The Court concludes that Congress has committed this dispute to the exclusive jurisdiction of the Court of Federal Claims. Accordingly, Plaintiff's *Motion* must be denied as the Court lacks jurisdiction to enter an injunction. Pursuant to 28 U.S.C. § 1631, this action will be transferred to the Court of Federal Claims, the sole court with jurisdiction over Plaintiff's claims, and motions which remain outstanding.

**BACKGROUND**

    According to the allegations of the Complaint,[1] Plaintiff USA Jet Airlines, Inc. ("USA Jet") is an air carrier authorized by the United States Department of Transportation to engage in

---

[1]The Court has elected to analyze jurisdiction under a facial standard; accordingly, the Court presumes that all of the well-pleaded factual allegations in US Jet's complaint are true. *City of Albuquerque v. United States Dept. of the Interior*, 379 F.3d 901, 906 (10th Cir. 2004).

interstate and foreign air transportation of passengers, property, and mail.   USA Jet holds an FAA Air Carrier Certificate, authorizing USA Jet to operate and maintain aircraft, including large aircraft such as the DC-9 or the Boeing 737.

Defendant National Nuclear Security Agency ("NNSA") is a separately organized entity within Defendant, the United States Department of Energy ("DOE").   For at least the past 35 years,  DOE/NNSA have contracted with a commercial aviation company to operate and maintain DOE/NNSA-owned aircraft, which NNSA uses to transport passengers and cargo, conduct research and development flights, and to transport teams responding to nuclear accidents or emergencies.  DOE/NNSA's fleet of aircraft includes DC-9s, which DOC/NNSA plans to replace with Boeing 737s.  DOE/NNSA does not hold FAA-issued certificates that would allow DOS/NNSA to operate or maintain DC-9s or 737s.

USA Jet and DOE/NNSA are currently parties to a contract pursuant to which USA Jet operates and maintains DOE/NNSA aircraft based at Kirtland Air Force Base in Albuquerque. USA Jet competed for and was awarded the contract in 2006. This contract will expire in November 2011. DOE/NNSA have made a final agency decision to operate DOE/NNSA aircraft with federal employees and to contract for maintenance services.   This decision was reached in violation of federal statues and regulations governing the procurement of services by federal agencies, including the provisions of Office of Management and Budget Circular A-76.[2] Further, if

---

[2]OMB Circular No. A-76 sets forth the procedures "for determining whether commercial activities should be performed under contract with commercial sources or in-house using Government facilities and personnel." *Fed. Mgt. Sys., Inc. v. United States*, 61 Fed. Cl. 364, 368 (2004). "In performing the cost comparison under OMB A-76, the agency is to compare the bid of the private sector source with the cost of providing the good or service with government facilities and personnel. . . . If the government performance is determined to be more economical, no award is made under the request, and the solicitation may be canceled." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1155-56 (Fed. Cir. 2004).

this decision is carried out, DOE/NNSA aircraft will be operated and maintained in violation of FAA regulations.  As the result of DOE/NNSA's actions, USA Jet has been deprived of an opportunity to compete for further contracts with DOE/NNSA.

**DISCUSSION**

**Jurisdiction**

As a matter preliminary to the consideration of USA Jet's motion for a preliminary injunction, the Court must satisfy itself that it has jurisdiction.  Defendants assert that this Court is without jurisdiction to proceed in this case.  USA Jet asserts that this Court has jurisdiction under 28 U.S.C. § 1331.  Although §1331 provides a broad grant of jurisdiction, it does not waive the United States' sovereign immunity. *City of Albuquerque*, 379 F.3d at 907.  "The defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable."  *Normandy Apartments, Ltd., v. U. S. Dep't of Hous. and Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). US Jet relies on the Administrative Procedures Act, specifically, 5 U.S.C. § 702,  to provide the required waiver of immunity. Section 702's waiver of immunity does not apply, however, if another statute provides an adequate remedy in a court.  *Suburban Mortgage Assocs., Inc. v. U.S. Dep't Hous. and Urban Dev.*, 480 F.3d 1116, 1122 (Fed. Cir. 2007) (noting three limitations on APA jurisdiction, including provision of 5 U.S.C. 704 limiting APA jurisdiction to suits where there is "no other adequate remedy in a court").  DOE/NNSA argue that the Court of Federal Claims has jurisdiction pursuant to 28 U.S.C. § 1491(b)(1) [Doc. 21 at 9].

28 U.S.C. § 1491(b) provides that:

> **(1)** Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a

> proposed procurement. Both the United States Court of Federal claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.
> **(2)** To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.
> . . . .
> **(4)** In any action under this subsection, the courts shall review the agency's decision pursuant to the standard set forth in section 706 of title 5.

Section 1491(b)(1) was enacted by the Administrative Dispute Resolution Act of 1996, Pub. L. 104-320 (the "ADRA"). The ADRA included a sunset provision terminating the concurrent jurisdiction of the district courts on January 1, 2001, unless extended by Congress. Pub. L. 104-320, § 12(d); 28 U.S.C.A. § 1491, Historical and Statutory Notes, Sunset Provisions. "Congress never acted, and the jurisdiction of the federal district courts lapsed." *Evers v. Astrue*, 536 F.3d 651, 663 (7th Cir. 2008). The Court of Appeals for the Federal Circuit has concluded that "Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal [the Court of Federal Claims] with exclusive jurisdiction to review government contract protest actions." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.2d 1071, 1079 (Fed. Cir. 2001).

US Jet argues that its claims do not fall with Court of Federal Claims jurisdiction as provided in § 1491(b)(1) because DOE/NNSA's decision to in-source does not involve a solicitation for bids or proposals, a proposed or actual award of a contract, or a violation of statute or regulation in connection with a procurement or proposed procurement. [Doc. 28 at 7] However, this argument was considered and rejected by the district court in *Labat-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 151 (D. D.C. 2004). After exhaustively examining the language of § 1491(b)(1) and the legislative history of the ADRA, the district court there concluded that claims

4

that an agency in-sourced services without conducting the competition contemplated by OMB Circular A-76 fall within the exclusive jurisdiction of the Court of Federal Claims. The district court transferred the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. Significantly, following transfer, the Court of Federal Claims determined that it had jurisdiction over the dispute pursuant to § 1491(b)(1). *Labat-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 574-75 (2005).

More recently, the Court of Federal Claims addressed the question of whether the Air Force's decision to in-source work that previously had been performed under a contract with the plaintiff fell within the court's jurisdiction under § 1491(b)(1). *Santa Barbara Applied Research, Inc. v. United States*, No. 11-86C, 2011 WL 1680355 ( Fed. Cl. May 4, 2011). The court held that the plaintiff-contractor, as the awardee of the current contract, was "plainly" an interested party under § 1491(b)(1). The court further held that the Air Force's decision to in-source work that the plaintiff had been performing was made in connection with a procurement: "The substance of the Air Force's decision has been to stop procuring services from [plaintiff] and to instead use Air Force civilian employees to do the same work. Thus, the in-sourcing decision in this case was made for the purpose of determining the need for contract services and thus was made 'in connection with a procurement decision.'" 2011 WL 1680355 at *6.

Additional case authorities support the conclusion that the Court of Federal Claims has jurisdiction over in-sourcing claims: *Rothe Development, Inc. v. United States Department of Defense*, Civ. No. SA-10-CV-743-XR, 2010 WL 4595824 (W.D. Tex. Nov. 3, 2010); *Vero Technical Support, Inc. v. United States Department of Defense*, 733 F. Supp. 2d 1336 (S.D. Fla. 2010); and *Harris Enterprises, Inc. v. United States Department of Defense*, Civ. No. SA-10-CA-573-FB (W.D. Tex. Oct. 12, 2010).

5

Plaintiff argues that these in-sourcing cases are distinguishable because they involved challenges to in-sourcing decisions under Department of Defense regulations and guidelines, whereas the present case centers on compliance with OMB Circular A-76. In the Court's view, this distinction goes to the merits of the protestant's cases (whether a violation of a statute or regulation actually occurred), not to the antecedent question of jurisdiction (whether the alleged violation of statute or regulation was "in connection with a procurement or proposed procurement"). Plaintiff also argues that these cases are distinguishable in that they involved allegations of flawed cost comparisons while the present case involves a failure to engage in any cost comparison at all. This argument was made in *Labat-Anderson*:

> This case is not a bid protest, [plaintiff] argues, because the government chose not to make a solicitation or allow bidding by private contractors before bringing the . . .services in-house. Accordingly, plaintiff claims, this [district] Court retains jurisdiction to hear this case despite the ADRA sunset provision.

346 F. Supp. at 151. The district court rejected this argument, concluding that "courts have consistently read the ADRA to encompass cases like this where the government never undertook a public competition for the contract–and thus there was no bid process to protest–but the challenged conduct was otherwise 'in connection with a procurement or proposed procurement." *Id.* The district court declined "to create an exception for awards of a contract *in-house without* a public competition." *Id.* at 155.

In summary, the weight of authority supports the conclusions that any APA jurisdiction that district courts once may have had over in-sourcing disputes was terminated in 2001 by operation of the ADRA sunset provision, and that US Jet's challenge to DOE/NNSA's in-sourcing decision falls within the now-exclusive jurisdiction of the COFC. Because the COFC has jurisdiction over this dispute, the APA cannot provide the requisite waiver of sovereign immunity. *Suburban Mortgage Assocs.*, 480 F.3d at 1122 (observing that a suit lies under the APA "only if

there were 'no other adequate remedy' in a court"; quoting 5 U.S.C. § 704). This Court, therefore, lacks jurisdiction over this dispute.

28 U.S.C. § 1631 provides that when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . .to any other . . .court in which the action . . . could have been brought at the time its was filed. . . ." A court may invoke this provision *sua sponte*. *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006). This Court finds that the interest of justice will be served by transfer of this case to the COFC, the sole court with jurisdiction over US Jet's claims. Transfer, as opposed to dismissal, will result in the more economical and expeditious determination of US Jet's claims.

**IT IS THEREFORE HEREBY ORDERED** that Plaintiff U.S. Jet Airlines, Inc.'s *Motion for Preliminary Injunction*. [Doc. 12] be and hereby is **denied**;

**IT IS FURTHER ORDERED** that this action is **transferred** to the Court of Federal Claims pursuant to 28 U.S.C. § 1631; **provided**, that pursuant to 28 U.S.C. § 1292(d)(4)(B) the Clerk of this Court shall not transfer this action to the Court of Federal Claims until (1) the Court of Appeals for the Federal Circuit decides any appeal of this Order, if an appeal is taken, or (2) the time for taking an appeal of this Order to the Court of Appeals for the Federal Circuit as provided in the Federal Rules of Appellate Procedure has expired, if no appeal is taken.

SO ORDERED this 27th day of September, 2011.

_____
**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**